NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

PARAGON SKYDIVE, LLC, *Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellees*.

No. 1 CA-CV 25-0483

FILED 07-31-2026

---

Appeal from the Superior Court in Maricopa County
No. CV2023-010887
The Honorable Christopher A. Coury, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Womble Bond Dickinson LLP, Phoenix
By Daniel P. Crane, Lucas Hickman
*Counsel for Plaintiff/Appellant*

Lewis Brisbois Bisgaard & Smith LLP, Phoenix
By Bruce C. Smith, Sean P. Healy
*Counsel for Defendants/Appellees State of Arizona and Arizona Department of Transportation*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the Court's decision in which Presiding Judge Daniel J. Kiley and Judge Cynthia J. Bailey joined.

---

**W I L L I A M S**, Judge:

¶1        Paragon Skydive, LLC ("Paragon") appeals from the superior court's judgment following the dismissal of Paragon's claims for damages and declaratory relief against the State of Arizona, et al. ("the State"). For the following reasons, we affirm in part, vacate in part, and remand for proceedings consistent with this decision.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        The Arizona Department of Transportation ("ADOT") owns and sponsors the Grand Canyon National Park Airport ("the Airport"), a public-use airport.[1] In August 2013, Paragon, an Arizona company, applied to ADOT to open a commercial skydiving operation at the Airport.

¶3        In June 2015, the Federal Aviation Administration ("the FAA") "performed an inspection at the Airport to evaluate the feasibility of integrating skydiving into ground and flight airport operations." In September 2015, the FAA issued a safety risk assessment, identifying certain actions the Airport needed to take to mitigate safety risks before introducing "parachuting operations."

¶4        In March 2016, ADOT and Paragon entered a lease agreement.[2] In December 2016, Paragon filed a complaint with ADOT's Civil Rights Office ("the Civil Rights Office"), alleging discrimination. After investigating Paragon's claims, the Civil Rights Office issued a report in February 2017, finding ADOT had imposed "unjust and unfair" fees and "discriminatory unwritten rules" on Paragon in violation of Grant

---

[1]        A sponsor, in this context, is the owner of a public-use airport that applies to the federal government for financial assistance. 49 U.S.C. § 47102(26).

[2]        Over subsequent years, the parties both extended and amended the lease.

Assurance 22, which prohibits economic discrimination.[3] The Civil Rights Office also concluded the Airport manager had engaged in unprofessional and dishonest communications with Paragon. In October 2017, an ADOT senior auditor determined ADOT had imposed some improper fees and recommended that ADOT refund approximately $3,200 to Paragon.

¶5         In January 2018, Paragon filed an informal complaint with the FAA, alleging ADOT had violated Grant Assurance 22 by requiring Paragon to obtain certain skydiving insurance. Two months later, Paragon filed another informal complaint with the FAA, alleging ADOT had unlawfully imposed a gross-receipts fee on Paragon's skydiving sales. In December 2019, Paragon filed a formal complaint with the FAA, reasserting the allegations raised in its informal complaints as well as numerous other claims, including challenging ADOT's restriction of its services to only tandem skydives.

¶6         On January 21, 2022, the FAA issued its Director's Determination, finding ADOT had violated Grant Assurance 22 by: (1) "unjustly" requiring Paragon to obtain "high and unreasonable" skydiving liability insurance, (2) restricting Paragon's skydiving operations, including by forbidding solo jumps, and (3) imposing a 10% gross-receipts fee on Paragon "compared to [the] established 1.5% fee imposed on similarly-situated air tour operators." ADOT appealed. In March 2023, the FAA's Associate Administrator issued the agency's Final Decision, affirming the Director's finding that ADOT had violated Grant Assurance 22 by imposing certain insurance requirements and restricting solo jumps, but overturning the Director's determination concerning the gross-receipts fee.

---

[3]    "Grant Assurances" are obligations airport owners or sponsors must agree to before accepting funds from FAA-administered airport financial assistance programs. "These obligations require the recipients to maintain and operate their facilities safely and efficiently and in accordance with specified conditions." FAA, *Grant Assurances (Obligations)*, https://faa.gov/airports/aip/grant_assurances (last visited July 28, 2026).

Among other things, Grant Assurance 22 requires airport sponsors to: (1) make airports available for public use, "without unjust discrimination to all types, kinds and classes of aeronautical activities," and (2) "[c]harge reasonable, and not unjustly discriminatory, prices for each unit or service." FAA, *Assurances: Airport Sponsors*, https://www.faa.gov/airports/aip/grant_assurances/assurances-airport-sponsors-2025 (last visited July 28, 2026).

¶7          Meanwhile, Paragon provided ADOT with a notice of claim on July 19, 2022, and an amended notice of claim on June 2, 2023. As outlined in its amended notice of claim, Paragon asserted that:

> ADOT's wrongful conduct has caused Paragon substantial harm that entitles Paragon to monetary damages for the claims described above. ADOT has needlessly, and admittedly, discriminated against, harassed, and oppressed Paragon since 2013. ADOT unjustly prevented Paragon from commencing operations for three years, which has caused Paragon to lose revenue estimated at over $2,000,000. Moreover, through just enforcement of provisions the FAA has now determined (and confirmed) are unlawful, ADOT has improperly collected, or caused Paragon to incur, fees and expenses in excess of $255,000.

Given these alleged damages, Paragon demanded $275,000 to settle its claims.

¶8          The State did not respond to Paragon's notices of claim. In July 2023, Paragon filed a complaint against the State, alleging a breach of the implied covenant of good faith and fair dealing (Count 1), economic duress (Count 2), unjust enrichment (Count 3), and conversion (Count 4). Paragon alleged that ADOT's conduct caused it damages exceeding $300,000. Apart from its claims for damages, Paragon sought declaratory relief (Count 5) "confirming that the [lease] provisions the FAA determined violated Grant Assurance 22 are unenforceable and that ADOT cannot continue to impose unlawful restrictions on Paragon."

¶9          The State moved to dismiss the complaint, arguing: (1) Paragon failed to comply with the statutory requirements for notices of claim, (2) Paragon failed to file the complaint within one year after the cause of action accrued, and (3) the doctrine of res judicata precluded Paragon from relitigating claims already subject to a final determination by the FAA. In response to the State's timeliness arguments, Paragon clarified that it did not seek "damages based on discrimination from 2016 or 2017"; rather, it sought only "damages for ADOT *continuing* to impose" requirements found unlawful by the FAA. According to Paragon, "[g]oing through the FAA complaint process was necessary to establish which of ADOT's actions were unlawful," and because the FAA found some of ADOT's conduct unlawful, Paragon was entitled, "at a minimum," to "seek damages from 2022 forward." With respect to ADOT's contention that it failed to provide the requisite factual support for its settlement demand, Paragon pointed to

the Civil Rights Office's findings of discrimination and the FAA's determinations of grant assurance violations as "provid[ing] ADOT more than enough facts to understand the basis upon which its liability is asserted." Finally, Paragon rejected ADOT's res judicata argument, acknowledging that "common facts underlie this action" and the "prior administrative proceedings," but asserting "the legal issues are dissimilar."

**¶10**　　　　After reviewing the parties' full briefing, the superior court dismissed Counts 1 through 4, finding Paragon's notices of claim statutorily non-compliant. Because the notice of claim statute applies only to claims for damages, not those for declaratory relief, *Home Builders Ass'n of Cent. Ariz. v. Kard*, 219 Ariz. 374, 381, ¶ 31 (App. 2008), the court found the notice of claim deficiencies did not compel the dismissal of Count 5. The court also determined that Paragon timely filed its complaint within a year of the FAA entering its Final Decision and that the doctrine of res judicata did not bar declaratory relief. Accordingly, the court denied the State's motion to dismiss with respect to Count 5.

**¶11**　　　　Thereafter, the State again moved to dismiss. In its reply in support of the motion to dismiss, the State argued that the superior court lacked subject-matter jurisdiction over Paragon's claim for declaratory relief "because Congress gave the FAA exclusive jurisdiction in [*sic*] to determine compliance with grant assurances, and only federal courts of appeals have jurisdiction to review the FAA's determinations."

**¶12**　　　　Because the State raised the subject-matter jurisdiction argument for the first time in its reply, the superior court granted Paragon an opportunity to file supplemental briefing on the issue. In response, Paragon pointed to the parties' lease, which expressly states that Arizona law "govern[s] the terms and interpretations" of the contract, and argued the superior court has "subject matter jurisdiction to evaluate whether the contract at issue violates federal law . . . where the FAA has already determined the contract at issue *does violate federal law*." Paragon further asserted that "Congress did not intend to federally preempt the entire field as to all legal relations with federally funded airports, and the declaratory relief . . . [sought] would not create an irreconcilable conflict with nor frustrate the objectives of the Federal Aviation Act."

**¶13**　　　　Before ruling on the State's second motion to dismiss, the superior court took judicial notice that the FAA had closed Paragon's complaint. Pointing to FAA regulations authorizing the Director to determine whether "there has been compliance with a corrective action plan, and when areas of noncompliance have been corrected," the court

noted that on December 9, 2024, the Director "sent an order" to ADOT finding "that ADOT has adequately addressed all of the violations." The court then granted the State's second motion to dismiss, finding the court lacked "subject matter jurisdiction to adjudicate the single claim remaining in [the] case, or to make the requested declaration."

**¶14** Upon the dismissal of all of Paragon's claims, the State requested an award of its attorneys' fees and costs. The superior court awarded the State reduced attorneys' fees of $100,000 and taxable costs of $467.32.

**¶15** The superior court then entered a final judgment incorporating its dismissal rulings and its award of attorneys' fees and costs. Paragon timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21 and -2101(A)(1).

## DISCUSSION

### I. Dismissal Rulings

#### A. Claims for Damages

**¶16** Paragon challenges the superior court's dismissal of its claims for damages. Contrary to the court's findings, Paragon contends that its notices of claim complied with the statutory requirements and "provided ADOT more than sufficient information to evaluate" its claims and decide whether "to resolve the dispute for a payment of $275,000 (or negotiate from there)."

**¶17** Although the State moved to dismiss Paragon's complaint under Arizona Rule of Civil Procedure ("Rule") 12(b)(6), it attached various exhibits to its motion. The superior court, in its dismissal ruling, did not exclude the State's exhibits from consideration. In fact, the court stated it "reviewed, at length, the exhibits submitted by" the State. Because the court did not exclude from consideration extrinsic evidence that was not central to the claims outlined in the complaint, including an audit and analysis report of charges ADOT imposed on Paragon from March 2016 through March 2017, the State's submission of the extraneous documents converted the motion to dismiss to one for summary judgment. *See* Ariz. R. Civ. P. 12(d) ("If, on a motion [asserting failure to state a claim upon which relief can be granted], matters outside the pleadings are presented to, and not excluded by, the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable

opportunity to present all the material that is pertinent to the motion."); *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 63, ¶ 8 (App. 2010) (explaining "Rule 56 treatment is not required when the court does not rely on the proffered extraneous materials"); *see also Elm Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 289, ¶ 7 (App. 2010) (holding a court may consider a document that "is central" to a claim "without converting a motion to dismiss to a motion for summary judgment").[4]

**¶18** In reviewing a grant of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). "We determine de novo whether any genuine issues of material fact exist and whether the [superior] court correctly applied the law." *Diaz v. Phoenix Lubrication Serv., Inc.*, 224 Ariz. 335, 338, ¶ 10 (App. 2010); *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."). We likewise review *de novo* issues of statutory construction. *City of Mesa v. Ryan*, 258 Ariz. 297, 299, ¶ 8 (2024).

### i. Supporting-Facts Requirement

**¶19** "Before initiating an action for damages against a public entity," a claimant must provide a statutorily compliant notice of claim. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 294, ¶ 1 (2007). Under Arizona's notice of claim statute, A.R.S. § 12-821.01(A), a claimant must provide a notice of claim to the public entity within 180 days after the cause of action accrues. Apart from prescribing the proper timing and method for submission, A.R.S. § 12-821.01(A) specifies that:

---

[4] To the extent Paragon contends the superior court improperly considered ADOT's exhibits without: (1) expressly converting the motion to dismiss to one for summary judgment, and (2) granting Paragon the opportunity "to produce responsive material," we note that Paragon filed a response and never requested a delay or any other relief. *See Workman v. Verde Wellness Ctr., Inc.*, 240 Ariz. 597, 602, ¶ 15 (App. 2016) (explaining the "reasonable opportunity requirement inherent in Rule 12(b) is satisfied when a party had the opportunity to file a written response or reply") (citation modified); *see also* Ariz. R. Civ. P. 56(d)(1) ("If an opposing party cannot present evidence essential to justify its opposition [to a motion for summary judgment], it may file a request for relief and expedited hearing.").

> The claim shall contain facts sufficient to permit the public entity . . . to understand the basis on which liability is claimed. The claim *shall also* contain a *specific amount* for which the claim *can be settled* and the *facts supporting that amount*.

(emphasis added). Together, these statutory mandates allow a public entity "to investigate and assess liability" and "realistically consider a claim." *Deer Valley*, 214 Ariz. at 295–96, ¶¶ 6, 9 (citation modified); *see also Backus v. State*, 220 Ariz. 101, 105–06, ¶ 17 (2009) ("Armed with [a sum certain demand and supporting facts], the public entity can decide whether and how to investigate the claim, at what level of damages to attempt to resolve the claim, and how to take the claim into account in planning and budgeting activities.").

**¶20** The failure to file a statutorily compliant notice of claim bars the claim. *Deer Valley*, 214 Ariz. at 295, ¶ 6; *see also City of Mesa*, 258 Ariz. at 298, ¶ 1 ("If a notice of claim fails to comply with [A.R.S.] § 12-821.01(A), the person is barred from suing the public entity or employee on the claim."). "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)." *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 527, ¶ 10 (2006). We review *de novo* whether a notice of claim complies with the statutory requirements. *Jones v. Cochise Cnty.*, 218 Ariz. 372, 375, ¶ 7 (App. 2008).

**¶21** To satisfy A.R.S. § 12-821.01's supporting-facts requirement, a claimant need not disclose *sufficient* facts to support the amount claimed, nor legal theories, mathematical formulas, calculations, itemized damages, or trial level proof. *See Backus*, 220 Ariz. at 106, ¶ 22 ("If the legislature had intended to require that a notice contain facts 'sufficient' to support the amount claimed, it would have said so."); *see also Yollin v. City of Glendale*, 219 Ariz. 24, 32, ¶ 23 (App. 2008) (stating the notice of claim statute does not require "theories" or "itemization"); *Havasupai Tribe of Havasupai Rsrv. v. Ariz. Bd. of Regents*, 220 Ariz. 214, 226, ¶ 42 (App. 2008) ("[S]ection 12-821.01 does not require a notice to contain facts sufficient to prove a claim."); *Jones*, 218 Ariz. at 377, ¶ 17 (holding A.R.S. § 12-821.01 "does not require the notice of claim to provide a specific calculation for each possible basis for or element of damage—only a total amount"). Instead, the supporting-facts requirement simply "compels claimants to provide a factual foundation to permit the entity to evaluate the amount claimed." *City of Mesa*, 258 Ariz. at 300, ¶ 12 (citation modified); *see also Yollin*, 219 Ariz. at 32, ¶ 25 ("The claim statute anticipates that government entities will investigate claims, and the supporting facts requirement is intended to be a

relatively light burden on claimants, just enough to facilitate the government's investigation.").

**¶22**       While the statutory obligation to present facts supporting the sum certain demanded "ensures that claimants will not demand unfounded amounts," *Deer Valley*, 214 Ariz. at 296, ¶ 9, A.R.S. § 12-821.01 "does not call for [judicial] inquiry into the reasonableness of a sum certain demand," *Yollin*, 219 Ariz. at 32, ¶ 23. In fact, except for "the narrow circumstance when *no facts* are provided," *id.* (emphasis added), even a "meager" factual recitation, *Vasquez v. State*, 220 Ariz. 304, 309, ¶ 15 (App. 2008), "laden with questionable inferences," *Yollin*, 219 Ariz. at 33, ¶ 31, satisfies the statutory threshold. In other words, a notice of claim need not contain facts that "prove the amount of the settlement demand" or even "demonstrate that the settlement demand is reasonable." *Havasupai Tribe*, 220 Ariz. at 229, ¶ 53. Rather, a notice of claim, "read as a whole," need only provide some facts corroborating or substantiating the amount of money sought. *Id.*; *Yollin*, 219 Ariz. at 35, ¶ 36 ("All a court must do is determine if the notice provides supporting facts to permit a governmental entity to investigate and substantively evaluate the factual basis for the sum certain.").

**¶23**       Two Arizona Supreme Court opinions, read in tandem, clarify A.R.S. § 12-821.01's supporting-facts requirement. First, in *Deer Valley*, the claimant, an assistant high school principal, provided a notice of claim letter to her former employer, alleging the school district had wrongfully terminated her employment. 214 Ariz. at 294, ¶ 2. Explaining she had been given the choice of accepting a teaching position "at a substantially lower salary or being fired," the claimant identified her settlement demand as follows:

1. All economic damages arising as a result of [the claimant's] removal from the [assistant principal] position in an amount anticipated to be approximately $35,000.00 per year or more going forward over the next 18 years;

2. Compensatory damages for emotional distress suffered as a result of the wrongful termination in an amount no less than $300,000.00;

3. General damages, compensating [the claimant] for damage to her reputation of employment in an amount of no less than $200,000.00.

*Id*. at 294–95, ¶¶ 2–3. The supreme court determined that the claimant's "repeated use of qualifying language ma[de] it impossible to ascertain the precise amount for which the [school district] could have settled her claim." *Id.* at 296, ¶ 10. While holding the notice of claim statutorily noncompliant on that basis, the supreme court also noted that the "letter provided no additional information" to support the claims for compensatory and reputational damages: "[T]he claim letter does not provide *any* facts supporting the claimed amounts for emotional distress and for damages to [the claimant's] reputation." *Id.* at 295, 297, ¶¶ 3, 11 n.3 (emphasis in original).

**¶24**　　　　More recently, in *Backus*, our supreme court revisited A.R.S. § 12-821.01's supporting-facts requirement and determined the "approach that best furthers legislative intent is to allow *a claimant to decide* what facts support the amount claimed and to disclose those facts as part of the notice of claim." 220 Ariz. at 106, ¶ 23 (emphasis added). Because "only the claimant knows which facts he regards as supporting the amount claimed," the supreme court reasoned "the statutory requirement that the claim include the facts supporting the amount claimed must refer to the *view of the claimant*, rather than to that of the public entity." *Id.* (emphasis added). Accordingly, the supreme court held that a claimant complies with the supporting-facts requirement "by providing the factual foundation *that the claimant regards as adequate* to permit the public entity to evaluate the specific amount claimed." *Id.* at 106–07, ¶ 23 (emphasis added). In establishing this standard, the supreme court explained that a claimant need not "provide an exhaustive list of facts; as long as a claimant provides facts to support the amount claimed, he has complied with the supporting-facts requirement of the statute, and courts should not scrutinize the claimant's description of facts to determine the 'sufficiency' of the factual disclosure." *Id.* at 107, ¶ 23. "Because the facts must be those that the claimant views as supporting the amount claimed, the claimant does not face the risk of having a valid claim dismissed for failure to meet a public entity's view of which facts the claimant should have disclosed." *Id.* at ¶ 24 (citation modified).

**¶25**　　　　In this case, Paragon detailed the State's alleged wrongdoing in its notices of claim, asserting that: (1) ADOT thwarted its efforts to open a skydiving operation at the Airport for nearly three years after it filed its initial application by imposing "ever-shifting" requirements; (2) ADOT engaged in high-pressure tactics during contract negotiations and, over Paragon's objections, incorporated lease provisions that violated FAA grant assurances; (3) ADOT employees threatened, sexually harassed, bullied, and discriminated against Paragon employees, leading Paragon to file a

formal complaint with the Civil Rights Office; (4) the Civil Rights Office found ADOT had imposed unfair and unjust fees and engaged in other misconduct; (5) ADOT refused to refund the improper fees and continued bullying tactics during negotiations to extend and amend the lease—demanding new, unlawful lease provisions, including requiring an "unprecedented new insurance policy offered by only one broker"—and (6) the FAA determined that ADOT had violated grant assurances by unlawfully imposing certain insurance requirements and restricting Paragon's services.

¶26            Paragon also outlined each of its prospective legal claims and tethered them to supporting facts: (1) Economic Duress and Coercion – "Paragon has been forced to incur aircraft tie down fees, pay for improperly required insurance, [and] incur additional expenses for discriminatory employee reporting policies"; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing – "ADOT required Paragon to enter into the 2018 Lease knowing that Paragon could not satisfy the ADOT-required insurance terms. . . . Paragon is [] entitled to recover its costs and fees that ADOT knew or should have known were unlawful in the 2016 and 2018 Leases including . . . the deposit ADOT impermissibly required from Paragon;" and (3) Alternative Unjust Enrichment and Conversion Claims – "[A]ll of the fees Paragon [has] paid served to enrich ADOT to Paragon's detriment and without any valid justification. Paragon believes it will recover those harms under a duress or breach of the implied covenant claim, but if a Court does not permit recovery under either of those theories, then ADOT has been unjustly enriched . . . . [and] ADOT's conversion of Paragon's property (money) has directly harmed Paragon."

¶27            After reviewing Paragon's notices of claim, the superior court found they wholly failed to comply with the supporting-facts requirement:

> Neither of the Notices contain any breakdown or calculation of the $255,000 in fees and expenses allegedly incurred. Neither of the Notices reference any exhibits thereto. And neither of the Notices provides any facts or discussion about how [Paragon] reached its estimate of $2,000,000 in lost revenues. Although the law provides a very permissive standard and does not require exhaustive recitation or calculation of damages, some facts are required. [Paragon] provided *no facts* to support the amounts claimed. There was nothing to support the specific amounts requested. Nor has [Paragon] suggested that it somehow provided this factual

information in documents given to [the State] with the Notices.

**¶28** To be sure, Paragon did not explain how it estimated lost revenues of approximately $2,000,000 or calculated $255,000 in allegedly improper, unfair, and discriminatory fees and requirements. But it was not required to do so. Instead, to comply with A.R.S. § 12-821.01(A), Paragon simply had to present *some* facts supporting its *settlement demand* of $275,000.

**¶29** Unlike the claimant in *Deer Valley*, who provided no facts to support two discrete portions of her settlement demand, here, Paragon detailed ADOT's allegedly improper conduct and identified various fees, restrictions (permitting only tandem skydiving, not solo), and requirements that it claimed were both unlawful and imposed in a discriminatory manner. Given that the settlement demand ($275,000) exceeds the alleged unlawful fees, restrictions, and requirements ($255,000), Paragon arguably failed to put forward facts demonstrating the *reasonableness* of its settlement demand. But again, it was not required to do so. *See City of Mesa*, 258 Ariz. at 300, ¶ 10 (explaining the demand of an unreasonable sum certain does not run afoul of A.R.S. § 12-821.01: "The settlement amount . . . can be a pie-in-the-sky number."). Paragon's factual recitation, though perhaps less than robust, both supported the sum certain demand and adequately facilitated the State's investigation. Stated differently, Paragon's notices of claim provided the State with ample opportunity to review the claimed basis for liability, investigate the claims and evaluate their merits, decide whether to pay the settlement demand, and engage in any necessary financial planning and budgeting. *See Jones*, 218 Ariz. at 376, ¶ 12 n.4; *see also Yollin*, 219 Ariz. at 33, ¶ 29.

**¶30** In sum, although Paragon did not itemize its damages or present a formula for how it calculated its settlement demand, its notices of claim provided supporting facts that allowed the State to substantively investigate the claims and evaluate the settlement offer. Therefore, applying the claimant point-of-view standard established by our supreme court in *Backus*, we conclude Paragon complied with the statutory supporting-facts requirement.

### ii. Timeliness Requirements

**¶31** Apart from contesting the notices of claim as factually deficient, the State argues that dismissal of Paragon's claims for damages was warranted because Paragon untimely filed both its notices and its

complaint. Though briefed, the superior court did not decide the timeliness issue, but we will affirm the dismissal ruling if "correct for any reason." *Fappani v. Bratton*, 243 Ariz. 306, 309, ¶ 8 (App. 2017).

¶32 As noted by the superior court, Paragon, in response to the State's motion to dismiss, "reduced the scope of its [alleged] damages," clarifying that it did not seek "damages based on discrimination from 2016 or 2017"; rather, it sought only "damages for ADOT *continuing* to impose" unlawful requirements. Consistent with this narrowed scope, Paragon, in its opening brief, states that it "asserted damages dating back to the beginning of the FAA complaint process (in 2018)." But despite *seemingly* disclaiming any right to recover damages sustained before 2018—both in the superior court and on appeal—Paragon argues in its reply brief that its claims for unlawful fees and charges imposed in 2016 and 2017, as well as "pre-operations" lost revenue, "are not barred."

¶33 Section 12-821.01(A) bars any claim against a public entity unless a notice of claim is filed "within one hundred eighty days after the cause of action accrues." Likewise, A.R.S. § 12-821 precludes any action against a public entity that is not "brought within one year after the cause of action accrues."

¶34 For purposes of both statutes, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B); *see also Liberti v. City of Scottsdale*, 258 Ariz. 496, 502, ¶ 19 (App. 2024) ("The accrual date marks the beginning of both a notice of claim's limitations period and the complaint's one-year statute of limitations."). But accrual is delayed when the parties "must" submit a claim to either a dispute resolution proceeding or an administrative review process. A.R.S. § 12-821.01(C); *Standard Constr. Co., Inc. v. State*, 249 Ariz. 559, 562, ¶ 7 (App. 2020). In such circumstances, A.R.S. § 12-821.01(C) suspends accrual until the "processes or remedies have been exhausted." Under this tolling provision, "[t]he time in which to give notice of a potential claim and to sue on the claim shall run from the date on which a final decision or notice of disposition is issued." A.R.S. § 12-821.01(C). In this way, A.R.S. § 12-821.01 "ensures that the parties' opportunity to engage" in dispute resolution or an administrative review process "is meaningful." *Standard Constr.*, 249 Ariz. at 562, ¶ 7.

¶35 "To determine whether a claim is time-barred, we must consider: (1) the cause of action's accrual date, (2) the applicable limitations

period, (3) the date the plaintiff filed his or her claim, and (4) any possible tolling or suspending of the limitations period." *France v. Ariz. Cntys. Ins. Pool*, 254 Ariz. 151, 153, ¶ 8 (App. 2022). "When a cause of action accrued is generally a question of fact for the jury, but it may be decided as a matter of law if the record shows when the plaintiff unquestionably was aware of the necessary facts underlying his or her cause of action." *Cruz v. City of Tucson*, 243 Ariz. 69, 71–72, ¶ 7 (App. 2017) (citation modified). We review *de novo* "questions of law concerning a cause of action's accrual and statutes of limitations." *Liberti*, 258 Ariz. at 501, ¶ 17.

**¶36** In this case, we need not determine when Paragon first realized it sustained economic damages or knew or should have known that the State caused it harm because, without question, it had such knowledge when the Civil Rights Office issued its investigative report on February 15, 2017. Despite the Civil Rights Office's express findings that ADOT had engaged in unlawful, discriminatory conduct—and subsequent admonition that Paragon should "file a new complaint directly with the [FAA]" if it had any further issues—Paragon, inexplicably, did not file a complaint with the FAA until January 2018. Meaning, after it undoubtedly had the requisite knowledge of harm, Paragon waited more than 10 months to avail itself of the FAA's administrative review process. Because more than 180 days elapsed between the February 2017 accrual date and Paragon's January 2018 filing of an informal complaint seeking administrative review from the FAA, Paragon's notices of claim, to the extent they sought to recover damages sustained before 2018, were untimely. Simply put, Paragon is time-barred from recovering damages for alleged harm sustained before the administrative review process commenced in January 2018.

**¶37** The remaining question is whether Paragon's filing of its first informal complaint with the FAA—initiating the administrative review process—tolled the accrual date for its cause of action for damages sustained thereafter. The State contends that no federal or state law or regulation suspended the accrual date in this case.

**¶38** While this court has held that A.R.S. § 12-821.01(C)'s tolling provision applies when a party *chooses* to pursue administrative review, even if the party *could have* bypassed the review process altogether, *Standard Constr.*, 249 Ariz. at 563, ¶ 8 (noting the "statute does not restrict itself to claims that automatically must be submitted" and refusing to "add such qualifying language" in construing the statute because doing so would "discourage settlement, in direct contravention of the statute's public policy goals" (citation modified)), in this case, the mandatory exhaustion of

administrative remedies doctrine *compelled* Paragon to seek administrative review before pursuing litigation—necessarily tolling the limitations period, *Ariz. Dep't of Rev. v. Dougherty*, 200 Ariz. 515, 522, ¶ 25 (2001) ("[T]he statute of limitations is tolled while the claimant exhausts his or her administrative remedies.").

**¶39** Under the doctrine of exhaustion of remedies, "litigants may not seek judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Moulton v. Napolitano*, 205 Ariz. 506, 511, ¶ 9 (App. 2003) (citation modified). Applying this principle "allow[s] an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Id.* (citation modified). Thus, the "doctrine promotes both judicial economy and administrative agency autonomy by preventing premature judicial intervention in inchoate administrative proceedings." *Id.* (citation modified).

**¶40** "If parties have statutory recourse to an administrative agency that has authority to grant appropriate remedies, they must scrupulously follow the statutory procedures." *Id.* (citation modified). "A party's failure to exhaust administrative remedies deprives the superior court of authority to hear the party's claim." *Hamilton v. State*, 186 Ariz. 590, 593 (App. 1996).

**¶41** "To resolve whether an exhaustion of administrative remedies is required, the court must decide whether an administrative agency has original jurisdiction over the subject matter." *Moulton*, 205 Ariz. at 511, ¶ 10. Put another way, the court must determine whether the legislature has specifically empowered the agency to act. *Id.*

**¶42** For alleged federal grant assurance violations, federal statutes and regulations provide only one recourse—administrative review. Specifically, the Airport and Airway Improvement Act of 1982 ("the Act"), Pub. L. No. 97-248, 96 Stat. 324 (recodified as amended at 49 U.S.C. §§ 47101–146), grants exclusive jurisdiction to the FAA, under the direction of the Secretary of Transportation, to enforce compliance with federal grant assurances. 49 U.S.C. §§ 46101, 47122; *see also Asheville Jet, Inc. v. City of Asheville*, 689 S.E.2d 162, 167 (N.C. App. 2010) (holding the "FAA has sole jurisdiction to make the initial determination concerning an airport's alleged violation of grant assurances"); *Town of Fairview v. U.S. Dep't of Transp.*, 201 F.Supp.2d 64, 69–70 (D. D.C. 2002) (explaining the "proper recourse" for any complaint alleging the failure to comply with grant

assurances is an FAA administrative review proceeding). In fact, the Act provides no private cause of action, or any remedy to a party reporting a grant assurance violation. *See Northwest Airlines, Inc. v. Cnty. of Kent, Mich.*, 955 F.2d 1054, 1058–59 (6th Cir. 1992) ("Congress intended that there would be no private right of action under [the Act]"); *New England Legal Found. v. Mass. Port Auth.*, 883 F.2d 157, 168–70 (1st Cir. 1989) (holding no private right of action exists under the Act); *Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 915–16 (8th Cir. 1997) (holding that Congress intended to establish an administrative enforcement scheme rather than a private right of action under the Act).

¶43 At its core, Paragon's complaint presents a contract dispute between an airport owner and a tenant. But Paragon predicates its claims for damages on ADOT's alleged violations of FAA grant assurances. Indeed, both the notices of claim and the complaint allege grant assurance violations throughout, with Paragon contending that ADOT imposed fees, requirements, and restrictions in violation of Grant Assurance 22's prohibition on economic discrimination. Because the FAA had exclusive jurisdiction to determine whether ADOT violated a grant assurance — laying the factual predicate for the contract claims — Paragon had to seek administrative relief from the FAA before bringing its claims for damages in the superior court.[5]

¶44 Accordingly, Paragon's filing of its first informal complaint with the FAA triggered A.R.S. § 12-821.01's tolling provision, so a cause of action for damages Paragon sustained after January 2018 did not accrue until the FAA issued its Final Decision in March 2023 — marking the end of the administrative review process. *Cf. Watkins v. Arpaio*, 239 Ariz. 168, 171, ¶ 10 n.4 (App. 2016) (recounting that several Arizona cases have applied a "variety of the 'continuing wrong' doctrine," wherein a plaintiff who did not timely pursue litigation upon discovering harm from a wrongful act nonetheless "may recover damages suffered during the limitations period immediately preceding [the] filing of the complaint"). Therefore, for damages allegedly sustained after January 2018, Paragon timely submitted its notices of claim (July 2022 and June 2023) under A.R.S. § 12-821.01(A) and timely filed its complaint (July 2023) under A.R.S. § 12-821.

¶45 In sum, because more than 180 days elapsed between the accrual of Paragon's cause of action for damages allegedly sustained before

---

[5] Notably, despite finding grant assurance violations, the Civil Rights Office, in its investigative report, repeatedly stated that it lacked the requisite expertise to make such determinations.

2018 and Paragon's filing of a complaint for administrative review with the FAA, Paragon is time-barred from seeking recovery for such damages. However, Paragon's initiation of the administrative review process tolled the accrual of its cause of action for damages sustained after January 2018, and Paragon timely filed both its notices of claim and its complaint within the requisite statutory periods after the FAA issued its Final Decision. Therefore, because Paragon provided the facts it regarded as supporting its sum certain demand for settlement, satisfying the supporting-facts component of A.R.S. § 12-821.01's notice of claim requirements, Paragon's claims for damages were subject to dismissal only to the extent they sought damages sustained before 2018. For these reasons, we vacate the superior court's ruling and remand for proceedings consistent with this decision.[6]

### B. Claim for Declaratory Relief

**¶46**   Paragon challenges the superior court's dismissal of its claim for declaratory relief on grounds of lack of subject matter jurisdiction. Although Paragon acknowledges the FAA's "exclusive jurisdiction" to monitor and enforce compliance with grant assurances, it contends the superior court has the authority to declare certain provisions of the parties' lease agreement unenforceable because the FAA has "already determined" the provisions violate Grant Assurance 22.

**¶47**   "Subject matter jurisdiction is the power of a court to hear and determine a controversy." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 594, ¶ 13 (App. 2009) (citation modified). We review *de novo* whether a superior court has the authority to hear a case relating to a specific subject matter. *Buehler v. Retzer ex rel. Indus. Comm'n*, 227 Ariz. 520, 521, ¶ 4 (App. 2011).

**¶48**   Under the doctrine of preemption, federal law prevails over state law when Congress demonstrates an intent for federal supremacy. *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, 789 F.Supp. 360, 362 (D. Kan. 1992). Apart from "express language" limiting state authority, "state action may be foreclosed by implication from the depth and breadth of a congressional scheme that occupies the legislative field or because of a

---

[6]  Although the State asserted, in its initial motion to dismiss, that Paragon's claims were subject to dismissal on res judicata grounds, it has abandoned that claim on appeal, so we need not address it. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (explaining the failure to raise an argument or claim on appeal constitutes abandonment and waiver of the claim).

conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (citation modified). "Courts are reluctant to infer preemption," so "the party claiming that Congress intended to preempt state law" bears the burden of proof. *Sunbird Air*, 789 F.Supp. at 362.

**¶49**        Applying these principles here, the Act clearly grants the FAA exclusive jurisdiction to enforce grant assurances, thereby preempting state court action in that sphere. But the Act delegates only limited powers to the FAA; it does not authorize the agency to address contract disputes between a federally funded airport and a third party, or award damages arising out of an airport sponsor's violation of grant assurances. *See Platinum Aviation and Platinum Jet Ctr. BMI v. Bloomington-Normal Airport Auth., Ill.*, Final Decision and Order of the FAA (Docket No. 16-06-09), 2007 WL 4854321, at *15, *18, *35 (Nov. 28, 2007) ("Nor does the FAA enforce contract terms between parties to an agreement when the FAA is not a party to that agreement. Rather, the FAA enforces the grant agreements it enters into with airport sponsors."); 49 U.S.C. § 47107(g); *see also Boca Airport, Inc. v. F.A.A.*, 389 F.3d 185, 191 (D.C. Cir. 2004) (explaining state courts, "rather than the FAA," provide the proper forum for resolving contractual disputes arising out of leases). Indeed, the "sole power of the FAA to penalize" grant assurance violations "is through the withholding of grant funds to the offending authority." *Asheville Jet*, 689 S.E.2d. at 172.

**¶50**        While the federal government occupies the entire field of regulating and enforcing grant assurances, the Act does not expressly state, or even contemplate, that FAA administrative review proceedings "are the sole remedy available to resolve conflicts between federally funded airports and tenants."[7] *Id.* at 168. In fact, rather than wholly supplanting state law, the federal code expressly recognizes and preserves existing statutory and common law remedies, 49 U.S.C. § 40120(C) ("Additional remedies. A remedy under this part is in addition to any other remedies provided by law."), such that state courts retain "broad authority to decide contractual disputes [between airports that receive FAA-funding and their tenants] under state law," *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995) (explaining that the "preemption prescription" under federal law "bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves"); *see also Sunbird Air*, 789 F.Supp. at 362–63 (explaining "the allowance of state

---

[7]        To this point, the Director's Determination stated that the FAA would not "attempt to negotiate a remedy" or otherwise intervene in the parties' contract dispute, specifically noting that the FAA "does not have the authority to award restitution, damages or attorney fees."

remedies" neither "frustrate[s] the objectives" of federal law nor "create[s] an irreconcilable conflict" between federal and state law because the "FAA does not have the power to assess damages for past wrongs"). Thus, despite federal preemption over the enforcement of grant assurances, states may grant damages for the violation of such regulations. *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 376 (3rd Cir. 1999).

**¶51**　　　In this case, Paragon did not seek a declaratory judgment that ADOT is ineligible for FAA grant-funding. Nor did Paragon seek a state court order modifying or even revisiting the FAA's determination of grant assurance violations. Instead, Paragon sought a judicial declaration that certain provisions of the parties' lease—those that the FAA found violated Grant Assurance 22—are unenforceable.

**¶52**　　　Because the superior court has authority over "[c]ases and proceedings in which exclusive jurisdiction is not vested by law in another court," Ariz. Const. art. 6, § 14(1), and the "power to declare" a party's rights under a contract, A.R.S. §§ 12-1831, -1832, it has jurisdiction to determine the enforceability of a lease, even one between a federally-funded airport and a tenant. *See Falcone Bros. & Assocs., Inc. v. City of Tucson*, 240 Ariz. 482, 487–88, ¶ 13 (App. 2016) ("When an action presents a traditional contract claim and no statute gives another entity exclusive jurisdiction over the matter, the superior court retains jurisdiction to resolve the claim."). Therefore, given Paragon's framing of the issue, at this stage of the proceedings, there is no basis to conclude that the superior court lacks subject matter jurisdiction over the claim for declaratory relief.

**¶53**　　　Finally, the State argues the superior court lacks the authority to declare the parties' rights under the lease because the FAA Director found that a draft lease submitted by ADOT contained none of the offending provisions previously found to violate Grant Assurance 22. Contrary to the State's contention, the FAA Director's finding that the *prospective* lease complies with ADOT's grant assurance obligations does not vitiate Paragon's request for a declaration that the *current* lease contains unenforceable provisions. *See Platinum Aviation*, FAA 16-06-09, 2007 WL 4854321, at *18 ("The FAA neither approves nor monitors terms of agreements between airport [owners] and airport tenants."). If the superior court determines, on remand, that the challenged lease is no longer in effect, Paragon's claim for declaratory relief may be subject to dismissal as moot, but not for lack of subject matter jurisdiction.

## II.     Attorneys' Fees

**¶54**          Paragon challenges the superior court's attorneys' fees award to the State. The court awarded the State attorneys' fees under A.R.S. § 12-341.01, which authorizes the award of attorneys' fees to "the successful party" in any action "arising out of a contract," and the parties' lease, which provides that the "prevailing party" to any legal action arising out of the contract "shall be entitled to recover . . . reasonable attorney's fees."

**¶55**          Without question, this litigation arose out of the parties' lease agreement, but at this stage of the proceedings, the State is no longer the successful or prevailing party. Therefore, we vacate the superior court's award of attorneys' fees and costs to the State.

## CONCLUSION

**¶56**          Both parties request an award of attorneys' fees on appeal pursuant to A.R.S. § 12-341.01(A) and the lease agreement. Because Paragon has prevailed on appeal, we award its reasonable attorneys' fees and costs upon compliance with ARCAP 21. We deny the State's request.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:              JR